UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TELOS HOLDINGS, INC. ) | |
| d/b/a POINT CLASSICS, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 3:09-0380 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| CASCADE, GmbH, *et al*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Pending before the court is a Motion to Compel Arbitration and Stay this Action Pending Completion of the Arbitration (Docket No. 45) filed by the defendant Cascade, GmbH ("Cascade") and a Motion to Amend Complaint filed by the plaintiff Telos Holdings, Inc. d/b/a/ Point Classics ("Point Classics") (Docket No. 58.).[1] For the reasons discussed herein, Cascade's motion will be granted in part and denied in part. There is an issue referable to arbitration in this matter, but the court lacks the authority to compel arbitration. Therefore, this matter will be stayed pending arbitration. In light of the stay, all other pending motions will be denied, without prejudice.

---

[1] Two other motions are also pending before Magistrate Judge Bryant. That is, the plaintiff's Motion for Attorney Fees and Costs for Personal Service on Richard Ellman d/b/a International Producers Group (Docket No. 17) and a *Pro Se* Motion to Dismiss Plaintiff's Action as Against Richard Ellman d/b/a International Producers Group filed by defendant Ellman (Docket No. 22).

1

# FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Point Classics, is a Texas-based music library that claims to own, and control the exclusive rights in, an approximately 3,200 sound recording "Catalog" of classical music sound recordings, including the copyrights to those recordings and the exclusive rights to distribute and license those recordings.[2] The plaintiff is in the business of licensing portions of the Catalog to record companies and to entities in the film and television business.

Defendant Cascade is a German company that licenses and distributes music on the Internet and throughout the world. The plaintiff alleges that, for several years, Cascade has been wrongfully and illegally licensing and selling portions of the Catalog to various third parties. Attached to the plaintiff's Complaint is a 120-page list of Infringed Sound Recordings, that is, musical pieces from the Catalog that, the plaintiff claims, have been wrongfully sold, licensed and/or distributed by Cascade. (Docket No. 1 Ex. B.) The plaintiff claims that "Cascade's licensing of the Infringed Sound Recordings to Third Parties has diminished Plaintiff's ability to profit from an otherwise valuable asset by diverting compensation for the licensing of the Infringed Sound Recordings away from Plaintiff and infringing Plaintiff's exclusive rights to control those sound recordings." (Docket No. 1 at 8.)

At various points over the last several years, Cascade and Point Classics have attempted to reach a resolution to their long-running dispute over Cascade's allegedly improper actions involving the Catalog. For instance, the plaintiff has previously provided to Cascade proof of its chain of title and former judgments involving the Infringed Sound Recordings and various courts' recognition of the plaintiff's copyright ownership. The plaintiff alleges that the

---

[2]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

presentation of this evidence did not result in Cascade's ceasing to improperly license and distribute sound recordings from the Catalog.

On December 7, 2007, as part of these ongoing attempts to resolve the dispute, Point Classics and Cascade entered into a written Licensing Agreement. In this agreement, Cascade acknowledged that Point Classics "is the sole and rightful owner of all exclusive rights in the [sound] recordings listed in Appendix A and in all other recordings belonging to the [Catalog]." (Docket No. 1 Ex. C. at 1.) "Appendix A" contains a list of 49 sound recordings from the Catalog, which appear to be selections from works by Mozart, such as the *The Marriage of Figaro* and *The Magic Flute* as performed by the London Philharmonic Orchestra. (Docket No. 58 Ex. B at 5.) In addition to containing this general acknowledgment of ownership and control, the Licensing Agreement purports to grant Cascade, for a period of five years, "the non-exclusive right and license ... to manufacture, distribute, sell, advertise, and exploit" the Appendix A sound recordings as part of a 40-CD "Box Set." (Docket No. 1 Ex. C. at 1.)

The Licensing Agreement also contains a clause that states: "[a]ny and all disputes that may arise as to the interpretation of this Agreement, or of any performance thereunder shall be determined by arbitration in Malibu [California] in accordance with the rules of the American Arbitration Association (with full discovery available), and subject to the terms and provisions hereof." (*Id.* at 2.) The applicability of this provision has been a central focus of the briefing of the motions presently before the court.

On April 28, 2009, the plaintiff filed its Complaint. Along with Cascade, the plaintiff sued several other entities that allegedly received, from Cascade, sub-licenses to market the Infringed Sound Recordings ("licensee" defendants). The plaintiff's claims are entirely based on

3

copyright infringement and copyright law, and they are premised on the core allegation that the defendants wrongfully transmitted, reproduced, and distributed sound recordings from a catalog exclusively owned and controlled by Point Classics. The plaintiff has voluntarily dismissed all of these "licensee" defendants except for Richard S. Ellman d/b/a International Producers Group. (Docket Nos. 7, 11, and 42.)

Cascade claims that, on August 31, 2009, counsel for Cascade e-mailed counsel for Point Classics, alerting plaintiff's counsel to the arbitration clause in the Licensing Agreement, and requesting that Cascade be granted an extension of time to answer the Complaint so that the parties could work out an agreement to arbitrate the claims. (Docket No. 45 at 3.) As indicated above, Point Classics does not view the arbitration clause in the Licensing Agreement as controlling, and, therefore, it has refused Cascade's requests to arbitrate. Following the rejection of its request to arbitrate, Cascade filed an Answer to the Complaint, which, for the most part, generally denied the allegations; however, the Answer also acknowledged that the parties had entered into the Licensing Agreement and it also asserted, as an affirmative defense, that all claims made by Point Classics here are subject to mandatory arbitration. (Docket No. 43 at 2, 13.)

Additionally, the plaintiff has recently filed a Motion to Amend its Complaint to add "Savoy Label Group" (SLG) as a "licensee" defendant. The proposed Amended Complaint alleges that Cascade has wrongfully licensed approximately 2,350 of the songs in the Catalog to SLG. (Docket No. 58 Ex. 1 at 3.) Also, the plaintiff's proposed Amended Complaint would recast the list of the Infringed Sound Recordings. According to the proposed Amended Complaint, this list is comprised of the 49 sound recordings in Appendix A of the Licensing

4

Agreement and the approximately 2,350 sound recordings that were allegedly improperly licensed by Cascade to SLG.  (Docket No. 58 Ex. 1 at 3.)

## ANALYSIS

The plaintiff claims that defendant Cascade has infringed on its copyrights by improperly licensing sound recordings exclusively owned by the plaintiff and that other entities have infringed on the plaintiff's copyrights by distributing the sound recordings that were improperly licensed by Cascade.  Cascade now seeks to enforce a purported "binding arbitration agreement between the parties" and moves the court to compel arbitration of this matter under the Federal Arbitration Act, 9 U.S.C. § 4.  (Docket No. 45 at 1.)  For various reasons, the plaintiff argues that arbitration should not be compelled, and that this case should go forward in this court without delay.  The plaintiff also moves to amend its Complaint to add an additional "licensee" defendant and also to recast its list of Infringed Sound Recordings.

I.      **Motion to Compel Arbitration**

      A.      **Legal Standard**

Under Section 3 of the Federal Arbitration Act (FAA), when an action is brought in federal court "upon any issue referable to arbitration under agreement in writing for such arbitration," the court must "stay the . . . action pending arbitration once it is satisfied that the issue is arbitrable under the agreement."  *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 488 (6th Cir. 2002) (citing and quoting 9 U.S.C. § 3; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967)).  Section 4 of the FAA provides that one who is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition," often via a motion to compel arbitration, the district court for an order

5

directing that "such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. There is a federal policy favoring arbitration, and any doubts held by the court about the "scope of arbitrable issues" should be resolved in favor of arbitration. *Burden*, 267 F.3d at 488 (internal quotation omitted).

Upon a motion to compel arbitration, the court must determine only whether the parties have agreed to arbitrate the dispute at issue. *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002). That is, the analysis does not reach the merits of the parties' claims. *Burden*, 267 F.3d at 487.

There are two common ways to challenge a motion to compel arbitration. First is to argue that the arbitration clause is not valid. *Id.* The party opposing arbitration on validity grounds must squarely focus on those facts and ordinary defenses to contract formation (such as fraud and duress) that render the arbitration clause, not the contract itself, invalid. *Id.* That is, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

The second common way to challenge a motion to compel arbitration is to argue that the clause is not applicable to the present dispute; that is, the present dispute falls outside of the "substantive scope" of the arbitration clause. *NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008). As to applicability, "the cornerstone" of the analysis "rests upon whether [the court] can resolve the instant case without reference to the agreement containing the arbitration clause. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise."

6

*Id.* at 814 (internal citation omitted).

If the existence of a valid and applicable arbitration agreement is not "in issue," that is, the existence of a valid and applicable arbitration clause is clear and not subject to reasonable dispute, the court must allow for arbitration of the matter. *Great Earth*, 288 F.3d at 889. If either the validity or the applicability of the arbitration clause is "in issue," the court must proceed directly to a trial to resolve that issue. *Great Earth*, 288 F.3d at 889. To show that either of these factors is in issue, the non-movant must show that there is a genuine issue of material fact as to the validity or applicability of the agreement to arbitrate, which is the same standard as is used for summary judgment. *Id.* Consistent with this summary judgment style approach, when determining if there is a genuine issue of material fact here, the court is to construe all facts and inferences therefrom in the light most favorable to the non-movant. *Id.*

### B. Application

The plaintiff challenges both the validity and the applicability of the arbitration clause in the Licensing Agreement. Both of the plaintiff's challenges to the clause are unavailing. As to validity, the plaintiff claims that Cascade "never performed" under the Licensing Agreement and never acted as if the agreement was in place. (Docket No. 55 at 2.) That is, the plaintiff contends that Cascade has not performed its obligations under the Licensing Agreement, has continued to wrongfully license the Catalog to third parties, and has denied Point Classics's rights in the Catalog, conduct that has continued through Cascade's filing of its Answer in this matter, as, in that Answer, Cascade either denied the plaintiff's claims of exclusive rights and control or claimed to lack sufficient information about the plaintiff's claims to admit or deny them. (*Id.* at 2-3.)

7

These arguments, however, fail to challenge the validity of the arbitration clause itself. Point Classics has failed to point the court to any evidence that the arbitration clause in the Licensing Agreement was the product of fraud, duress, or was otherwise not fairly and freely entered into by the parties. Consistent with the case law discussed above, in the absence of any such evidence, the court must look past Point Classics's allegations of non-performance and conclude that, as a matter of law, a valid agreement to arbitrate exists between the parties here. *Buckeye Check Cashing, Inc*., 546 U.S. at 445-46; *Great Earth*, 288 F.3d at 889.

On applicability, the parties offer widely diverging viewpoints. Cascade contends that the present dispute clearly concerns the "interpretation" of, and the parties' "performance" under, the Licensing Agreement, and, therefore, this dispute should be arbitrated. (Docket No. 45 at 2.) That is, the Licensing Agreement appears to govern the terms by which Cascade may "exploit" certain sound recordings within the Catalog, and, here, the plaintiff claims that Cascade has wrongfully exploited those sound recordings (among others). Therefore, Cascade argues, this dispute is about whether Cascade has gone beyond the "exploitation rights" bestowed by the Licensing Agreement, an issue that clearly implicates "interpretation" of the terms of the Licensing Agreement and "performance" under that agreement as well. (*Id* at 5.)[3]

---

[3]Cascade also argues that, in the Complaint, the plaintiff "relies, in significant part, on the Licensing Agreement to establish its ownership concerning the music sound recordings at issue in this litigation." (*Id.*) That is, as noted above, the plaintiff's Complaint refers to Cascade's acknowledgment, in the Licensing Agreement, of Point Classics's "exclusive rights" in the Catalog as evidence of the validity of its claims in this litigation. This is a weak argument in support of arbitration. The parties agreed to arbitrate issues related to interpretation of and performance under the Licensing Agreement. Cascade's acknowledgment of the plaintiff's ownership rights in the Catalog happens to appear in the Licensing Agreement, but there is no connection between that acknowledgment and the issues of interpretation and performance that the parties agreed to arbitrate.

8

In response, the plaintiff argues that "Cascade's motion erroneously presumes that the only sound recordings at issue . . . is the limited number of recordings that are subject to the [Licensing] Agreement." (Docket No. 55 at 2.) That is, the Licensing Agreement covers 49 sound recordings, only a small percentage of the sound recordings at issue in this dispute, whether the total number of Infringed Sound Recordings is judged by the 120-page list attached to the initial Complaint or by the roughly 2,400 Infringed Sound Recordings mentioned in the proposed Amended Complaint. (*Id.*) The plaintiff also argues that it "has not asked this court to interpret the terms of the [Licensing Agreement] or award damages for Cascade's breach"; rather, the plaintiff claims, it asks the court to adjudicate its rights under federal Copyright law, which is a matter wholly apart from an agreement that, the plaintiff claims, Cascade has never acknowledged or abided by. (*Id.* at 5.)

As discussed above, the key question regarding the applicability of the arbitration clause is whether the court could "resolve the instant case without reference to the agreement containing the arbitration clause." *NCR Corp.*, 512 F.3d at 814. The plaintiff contends that, without any reference to the Licensing Agreement, the court could determine the rightful owner of the sound recordings at issue (by reviewing "chain of title documents" among other things) and then could determine whether the defendants' use of those sound recordings had been unauthorized. (Docket No. 55 at 4.) As indicated above, Cascade contends that resolution of the plaintiff's copyright infringement claim would have to involve reference to the Licensing Agreement, because that agreement grants Cascade broad rights to exploit some of the sound recordings at issue, and, to determine whether Cascade infringed on the plaintiff's rights, the court would first have to determine if Cascade's purported infringement was permitted under the

9

terms of the Licensing Agreement. (Docket No. 45 at 2, 5.)

As to the 49 sound recordings in the "Appendix A" list attached to the Licensing Agreement, Cascade clearly has the better of the argument. Reference to Cascade's rights under that agreement would plainly be a necessary part of any analysis of whether Cascade infringed on the plaintiff's rights as to those sound recordings. That is, any infringement analysis would have to explore whether Cascade's conduct as to a given sound recording was within the exploitation rights bestowed on Cascade by the License Agreement. Additionally, while the court recognizes that a relatively small number of the total sound recordings at issue are implicated by the Licensing Agreement, the plaintiff never explains why the fact that "only" 49 sound recordings are implicated by the Licensing Agreement is determinative.[4] Therefore, any infringement claims against Cascade as to these 49 sound recordings must be submitted to arbitration and may not be ruled on by this court in the first instance.

All that said, the court cannot compel arbitration here. As indicated above, in the Licensing Agreement, the parties agreed to have the arbitration conducted in Malibu, California, which is outside of this judicial district. While the parties do not raise this issue, the Sixth Circuit has concluded that "the FAA prevents federal courts from compelling arbitration outside of their own district." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003). That is, where the parties have agreed, via a valid arbitration agreement, to arbitrate their dispute in a jurisdiction outside of the district in which the motion to compel is

---

[4] Indeed, the plaintiff could have gone a long way toward avoiding arbitration if it had not pleaded infringement as to these 49 sound recordings. Instead, after full briefing of these issues and a Motion to Amend the Complaint, the plaintiff continues to assert infringement as to these 49 sound recordings.

10

brought, the district court does not have the power to compel arbitration in that chosen jurisdiction. *See id.* ("where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4.")(internal quotation omitted).

When a district court is faced with this issue, it is proper for the court to invoke its inherent authority to stay the arbitrable portion of the litigation to provide the parties an opportunity to either come to an agreement as to how to proceed, or to allow the party moving to compel arbitration to advance the motion to compel in the appropriate district. *See Geo Vantage of Ohio, LLC. v. GeoVantage, Inc.*, 2006 WL 2583379, *11 (S.D. Ohio Sept. 6, 2006); *Ohio Environmental Council v. U.S. District Court, S.D. Ohio*, 565 F.2d 393, 396 (6th Cir. 1977)("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants.")(internal quotation omitted).[5] Therefore, this portion of the litigation (concerning the 49 "Appendix A" sound recordings) will be stayed.

The remaining issue, then, is how the litigation regarding the remaining sound recordings and the other defendants should proceed. Cascade argues that, under the FAA, this litigation should be stayed as well, "so that the parties can arbitrate their disputes concerning the sound

---

[5] While the parties appeared comfortable relying on their briefing and exhibits to make their case on Cascade's Motion to Compel, under the plain language of the FAA, the court cannot actually compel arbitration without a hearing on the matter. 9 U.S.C. § 4; *Glazer v. Lehman Bros, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)("[i]n order to compel arbitration, a court must conduct a hearing.") Therefore, before the court could have compelled arbitration in this matter, some sort of formal hearing would have been required. This point is, of course, somewhat mooted by the fact that the court, even if it conducted a hearing, would not have the authority to compel arbitration in the parties' chosen location.

11

recordings governed by the License Agreement without further delay or obstruction." (Docket No. 45 at 6.) Indeed, the FAA states that, once the court concludes that there is an issue referable to arbitration pursuant to an agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Sixth Circuit has also concluded, relying on the FAA, that "if a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

The plaintiff does not effectively address the issue of whether the remainder of this litigation should be stayed, arguing instead that "it is in the interests of judicial economy to maintain the action before this Court rather than splitting it between arbitration and this Court and chancing inconsistent results." (Docket No. 55 at 6.) However, recognizing that a portion of this dispute can only be properly advanced before an arbitrator, the court is forced to "split" the action. Moreover, as indicated above, the case law is clear: "under Section 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory." *Hensel v. Cargill, Inc.*, 1999 WL 993775, *4 (6th Cir. Oct. 19, 1999). Additionally, staying this litigation while arbitration is pursued will conserve resources, as the parties will not have to pursue litigation on two fronts, and it will more likely ensure consistent results, as this court will have the benefit of the arbitration decision before the litigation in this court resumes. Depending on the circumstances, an arbitrator's decision as to whether Cascade wrongfully licensed and/or distributed sound recordings on the Appendix A list could aid in the

12

resolution of whether Cascade wrongfully distributed other sound recordings. Therefore, the court will order this entire matter stayed pending arbitration.

## II. Motion to Amend Complaint (and other pending motions)

As discussed above, the plaintiff has filed a Motion to Amend its Complaint to add SLG as a licensee defendant and also to somewhat recast the list of Infringed Sound Recordings. (Docket No. 58.) Also as indicated above, in both the initial Complaint and in the proposed Amended Complaint, the plaintiff asserts infringement of the 49 sound recordings implicated by the Licensing Agreement. That is, in both Complaints, the plaintiff raises an issue referable to arbitration. (*See* Docket No. 58 Ex. 1 at 3.) Therefore, the fact that the plaintiff has moved to file an Amended Complaint does not affect the propriety of arbitration here.

When a matter is stayed pending arbitration, it is appropriate for the court to deny other pending motions, without prejudice. *See C & C Boat Works, LLC v. Skansi Marine, LLC*, 2009 WL 361139, *4 (E.D. La. Feb. 11, 2009); *U.S. Fidelity & Guaranty Co.v. Diaz Matos*, 2006 WL 2387159, *3 (D.P.R. Aug. 17, 2006); *O'Leary v. Salomon Smith Barney*, 2006 WL 1877136, *2 (D. N.J. July 6, 2006). This permits the parties, if warranted, to re-file these motions after the arbitration process is concluded, and it avoids cluttering the court's docket for an extended period of time with pending motions that cannot be ruled upon until after the arbitration process has concluded. *See id.* Therefore, in light of the stay, the plaintiff's Motion to Amend Complaint and the two motions pending before Magistrate Judge Bryant (Docket Nos. 17 and 22) will be denied without prejudice.[6]

---

[6] In its Motion to Compel, Cascade requests an extension of time that would permit its counsel ten days from the completion of arbitration to file a *pro hoc vice* motion in this court.

13

## CONCLUSION

For the reasons discussed herein, Cascade's Motion to Compel Arbitration and Stay this Action Pending Completion of the Arbitration will be granted in part and denied in part. This action will be stayed, but the court lacks the authority to compel arbitration. In light of the stay, all other pending motions will be denied, without prejudice.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

(Docket No. 45 at 1.) Additionally, after the Initial Case Management Conference in this case, the court ordered that "New York counsel for Cascade is not required to hire local counsel until ten days after a ruling on the Motion to Compel Arbitration, assuming that the case is going forward." (Docket No. 52.) As this matter will be stayed, these issues regarding counsel for Cascade are best left for after the stay is lifted.